IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:06cr169-WKW |
| | ) | |
| TERRENCE ANTWAN JEROME | ) | |
| NEWKIRK | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on CJA panel attorney Malcolm Newman's request for compensation in the amount of $21,655.86 for his representation of defendant Terrence Antwan Newkirk in the above-styled action. The court held a hearing on Newkirk's claim on May 28, 2008, and it has carefully reviewed Newman's voucher, the docket sheet, the court file, and the claims for compensation presented by counsel for Newkirk's co-defendants. For the reasons set out below, the undersigned concludes that Newkirk's claim is due to be granted in part and denied in part.

**Discussion**

The Criminal Justice Act provides that compensation for appointed counsel is limited by Congress to $7,000 per defendant in cases involving felony charges. 18 U.S.C. § 3006A(d)(2). Payment may not be made above this limit unless the presiding judge certifies to the chief judge of the circuit that the representation was extended or complex and that the amount of the excess payment is necessary to provide fair compensation. 18 U.S.C. § 3006A(d)(3). The process of certifying that the representation was extended or complex "is not one involving a 'rubber stamp.' It is a meaningful congressionally mandated step that

requires detailed justification not only by the lawyer, but also by the approving judge." United States v. Sepulveda, 502 F.Supp.2d 1104, 1106 (D. Mont. 2007).

The instant case involved 16 defendants, 13 of whom were represented by panel attorneys. The indictments stemmed from a four-year investigation by several government agencies of a substantial multi-state drug conspiracy. Discovery in the case amounted to some 7,500 documents and files. Although all but one of the defendants (including Newkirk) ultimately entered guilty pleas, the case was protracted, beginning with indictment on July 11, 2006, and, for Newkirk, ending with the entry of judgment on January 29, 2008. Counsel for six of the defendants – Terrence Newkirk, Charles Craig, Christopher Ulmer, Kowosky Christian, James Talley, and William Ulmer – submitted requests for compensation above the $7,000 limit at the conclusion of the case. The district judge has previously certified, and the chief judge of the court of appeals has approved, five of these claims for payment of fees over the $7,000 statutory maximum based on the court's finding that the representation was extended or complex and that the amount of the excess payment was necessary to provide fair compensation. For these reasons, the court concludes that a similar finding is due to be entered in Newkirk's case.

However, this finding does not end the court's inquiry. "Even if the Court finds a case extended or complex, and therefore eligible for excess compensation, there is still an obligation to decide whether the actual amount requested is reasonable. A finding of extended or complex status is the beginning of the inquiry, not the end. The

2

complex/extended finding allows the Court to certify to the Chief Judge of the Circuit payment in excess of the statutory maximum. It does not entitle a claimant to whatever amount he seeks." Id. at 1110. "The district court, as the body empowered to 'fix' CJA appointed counsel compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time." United States v. Menkes, 2007 WL 2892393, 1 (S.D.Fla. 2007) (citing 18 U.S.C. § 3006A(d)(5); United States v. Griggs, 240 F.3d 974 (11th Cir.2001)).

In this case, Newkirk has submitted a claim totaling $21,655.86. The next highest claim was submitted by counsel for Charles Craig (Tommy Goggans), who sought $17,211.55 and received $16,853.35 after adjustments. However, as the only defendant going to trial, Craig is not an appropriate comparator for Newkirk. The highest claim from a defendant who plead guilty, as did Newkirk, was submitted by Christopher Ulmer's appointed counsel, Dan Hamm. Hamm initially sought $11,390.02, but he voluntarily reduced his claim and was paid $9,664.02. The top five non-trial claims were submitted by defendants Christopher Ulmer (Dan Hamm); Kowosky Christian (Joseph Van Heest) - $7,873.74; James Talley (Richard Keith) - $7,539.96; William Ulmer (Tim Halstrom) - $7,204.43; and Darnell Brown (represented first by Charles Vercelli, and then by Pate Debardelaben) - $7,000.49. The average of these claims is approximately $7,856. Newkirk's submission is more than 60 **[175]** percent higher than this average.

Before analyzing the reasons for the wide disparity among these claims in order to

make a determination as to whether or not Newkirk's claim is reasonable, the court must first adjust attorney Malcolm Newman's bill to reflect certain corrections made by the CJA voucher administrator. These adjustments were made primarily to apply the correct hourly rates authorized during the course of Newman's representation and to reflect the actual time of certain proceedings noted on the court's minutes. The court has carefully reviewed the administrator's adjustments, and it agrees with and adopts those revisions. See United States v. Hunt, 2008 WL 4533937, 1 (S.D.Fla. Oct. 8, 2008); United States v. Snyder, 2008 WL 1733392, 3 (S.D.Fla. Apr. 14, 2008). As adjusted, Newkirk's claim totals $18,654.59.

Even after adjustment, Newkirk's submission is still some 48 **[93]** percent higher than the next highest adjusted claim for a defendant pleading guilty ($9,644.02), and nearly 60 **[153]** percent higher than the average of the top five adjusted claims (approximately $7,387). Much of the difference in these submissions is attributable to the time spent by counsel in obtaining and reviewing records. Of the 208 hours of work claimed by Newkirk's counsel, 118.6 hours were spent on this task. Most of this work involved review of discovery turned over by the United States; the rest primarily related to review of various motions, orders and other pleadings filed in this case.

With regard to discovery, the same or substantially the same set of records was turned over to all counsel in this proceeding, a fact which suggests that the time spent by every lawyer in reviewing the material should be at least reasonably comparable. See United States v. Browne, 2008 WL 878919, 1 (S.D.Ga. Mar. 1, 2008) (comparing CJA panel lawyer's

4

reimbursement request with compensation approved for co-defendant's counsel). However, the 118.6 hours for obtaining and reviewing records claimed by Newkirk's counsel exceeds all others by a substantial margin. The next highest claim in this category, for 64.4 hours, was submitted by Tommy Goggans, the only attorney in this case whose client went to trial. Goggans' request amounts to roughly 46 percent less time than Newkirk's counsel spent for this purpose. Furthermore, out-of-court hourly worksheets reflect that the highest total for obtaining and reviewing records for a defendant entering a guilty plea was Richard Keith's claim for 39.6 hours on behalf of James Talley. The average for the top five claimants in this category (Keith/Talley - 39.6, Halstrom/Ulmer - 36.10, Van Heest/Christian - 34.9, Lewis/Barnett - 32.38, and Vercelli/Debardelaben/Brown - 36.8) was approximately 36 hours. Thus, Newkirk claims some 66 **[199]** percent more time than the next highest non-trial defendant, and 70 **[229]** percent more than the top five average. In addition, the claim reflects some 79 **[378]** percent more time spent on obtaining and reviewing records than that expended by James Cooper (24.8 hours) on behalf of Cliff Johnson, the leader of the conspiracy and the principal focus of the government's investigation.[1]

One reason for the disparity in billing between Newkirk's counsel and the other CJA panel attorneys for review of the same set of documents may be a difference in reporting hours claimed. The instructions for filling out the CJA Form 20 indicate at Items 15 and 16

---

[1] Demetrious Pegues, the other leader of the conspiracy, was represented by retained counsel.

5

that hours claimed must be entered "in hours and tenths of an hour."[2] Thus, a 6 minute time increment should be billed as .10, a 12 minute increment is .20, an 18 minute increment is .30, and so forth. However, according to counsel's own statement at the May 28, 2008 hearing, he customarily used a .30 notation to represent an increment of 15 minutes rather than 18 minutes. This error likely contributed to the wide differential.

In addition, it appears to the court that either Newkirk's counsel did not exercise good litigation judgment in expending the number of hours claimed in obtaining and reviewing records, or he did not exercise good billing judgment[3] in deciding to bill this relatively large amount of time, or both. Newkirk was by no means the least involved participant in the conspiracy, but he was by all accounts a second tier player. Newkirk's counsel initially may have believed, as he contends, that Newkirk was potentially among the most culpable in the conspiracy because his name was listed fourth on the indictment, but counsel made no inquiry to the assistant U.S. Attorney (AUSA) assigned to the case to verify that assumption. Nor did Newkirk's counsel consult the AUSA for direction to the discovery materials most relevant to his client, unlike appointed counsel for most other defendants. Although the court does not suggest that such consultation could entirely replace counsel's responsibility of

---

[2] See http://jnet.ao.dcn/PFriendly/Forms/Criminal_Justice_Act_Forms/CJA0020_Instr.html at 3.

[3] Cf. Lozeau v. Lake County, Mont., 98 F.Supp.2d 1157, 1171 (D.Mont. 2000) (prisoner complaint) ("Counsel for the prevailing party should exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice is ethically obligated to exclude hours from his fee submission. In the private sector, billing judgment is an important component in fee setting. It is no less important here.")(citation omitted).

independent review, direction from the AUSA would have made that review more efficient, enabling counsel, for example, to determine which portions of the discovery (e.g., the drug buys, which made up perhaps 30 to 40 percent of the discovery, according to the AUSA) were unlikely to implicate his client and, thus, would require less time to examine.

With regard to counsel's review of motions, orders and pleadings, the court also finds the amount claimed to be excessive. All counsel received copies of essentially the same documents, with only a few exceptions. No reason has been shown to the court that Newkirk's counsel should have spent more time than other lawyers in reviewing such documents. Indeed, counsel's records clearly indicate over-billing in this regard – for example, he billed .30 (that is, 18 minutes, although counsel believed that this notation represented 15 minutes) for review of a three-paragraph standard order dated 3/30/07 which set a detention hearing; and he billed .30 for review of a standard five paragraph order dated 4/30/07 which continued trial, plus another .30 to examine a one-paragraph order directing the clerk to seal the first order; in addition to other, similar examples.

"In certifying the amount of excess compensation, the Court is guided by considerations of fairness and necessity. Fairness dictates that a panel member not receive less than that to which he is entitled for the services performed." Sepulveda, 502 F.Supp.2d at 1110. However, "[t]he requirement that the services for which counsel are compensated be necessary ensures that attorneys who work inefficiently or pad their bills do not reap a windfall for spending more time than needed on a given case." Id. "[T]he burden rests with

7

the applicant to 'provide sufficient details to support the premises that the representation was indeed extended or complex and that the excess is essential to fairness of the remuneration.'" United States v. Carnevale, 624 F.Supp. 381, 385 -386 (D.R.I. 1985)(citation omitted). Here, the court cannot conclude that Newkirk has met his burden with regard to the time claimed by his counsel over and above that claimed by other non-trial defendants for obtaining and reviewing records. Accordingly, giving Newkirk the benefit of the doubt, the court will recommend authorizing compensation for obtaining and reviewing records only up to the highest amount expended for any other defendant entering a guilty plea (that is, $3,844.60, which was paid for Richard Keith's claim of 39.6 hours of document review spent on behalf of James Talley). This reduces Newkirk's $10,857.20 adjusted claim for obtaining and reviewing records by $7,012.60, and brings his total claim for compensation, as adjusted, to $11,641.99, or a total of $4,641.99 over the $7,000 statutory maximum.

Newkirk's voucher raises several other issues, including questions concerning some of counsel's visits to the jail which are not entirely corroborated by jail records. However, the court is satisfied that there may be reasons for these discrepancies based on counsel's explanation that lawyers often must wait at the jail before reaching the sign-in sheet, and may not be "buzzed in" right away. Thus, the undersigned does not recommend reduction of these hours. In addition, the court considers the remainder of Newkirk's claim for time and expenses to be reasonable under the circumstances.

**Conclusion**

Accordingly, for the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that Newkirk's claim for his counsel's compensation be granted in part and denied in part, and that the court certify to the chief judge of the circuit that the representation was extended or complex and that the amount of the adjusted excess payment (that is, $4,641.99, for a total payment of $11,641.99) is necessary to provide fair compensation.

It is further ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before April 21, 2009. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982). See Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982). See also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on

September 30, 1981.

Done, this 8th day of April, 2009.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE